IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LEROY RICHARDSON-BEY,         )
                              )
        Plaintiff,             )
                              )
    v.                         )    1:23CV138
                              )
WARDEN M. SHELTON, et al.,    )
                              )
        Defendant(s).          )

MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, a prisoner of the State of North Carolina, submitted a civil rights action pursuant to 42 U.S.C. § 1983. The undersigned entered an Order and Recommendation (Docket Entry 2) recommending that the case be dismissed without prejudice based on Plaintiff's failure to submit the filing fee or an application to proceed *in forma pauperis* and also noting potential issues with the claims raised in the Complaint (Docket Entry 1). Plaintiff filed no objections, leading the District Judge assigned to the case to enter an Order (Docket Entry 4) and Judgment (Docket Entry 5) adopting the Recommendation and dismissing the case. Three days later, the Court received a payment of $400.00 of the $402.00 filing fee, prompting the District Judge to enter a Memorandum Opinion and Order (Docket Entry 7) vacating and withdrawing the Order and Judgment and allowing Plaintiff 20 days to either submit the remaining $2.00 of the filing fee along with an Amended Complaint attempting to address the defects noted in the Order and Recommendation or accept dismissal of the matter without prejudice and have the $400.00 payment returned to

him.  Plaintiff chose to submit the remaining $2.00 and an Amended Complaint (Docket Entry 8) in which he alleges discrimination and retaliation by prison officials and seeks injunctive relief and damages.  That Amended Complaint is now before the Court for review.[1]

Because Plaintiff is "a prisoner seek[ing] redress from a governmental entity or officer or employee of a governmental entity," this Court has an obligation to "review" this Complaint.  28 U.S.C. § 1915A(a).  "On review, the court shall . . . dismiss the complaint, or any portion of the complaint, if [it] – (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b).

As to the first basis for dismissal, the United States Supreme Court has explained that "a complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989).  "The word 'frivolous' is inherently elastic and not susceptible to categorical definition. . . . The term's capaciousness directs lower courts to conduct a flexible analysis, in light of the totality of the circumstances, of all factors bearing upon the frivolity of a claim."  Nagy v. Federal Med. Ctr. Butner, 376 F.3d 252, 256-57 (4th Cir. 2004) (some internal quotation marks omitted).  As part of this review, the Court may anticipate

---

[1] The Court will treat the Amended Complaint as the operative pleading in the case. However, in certain instances, the Court will give Plaintiff the benefit of the doubt and refer to allegations or exhibits contained in the original Complaint.

affirmative defenses that clearly appear on the face of the complaint. Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 954 (4th Cir. 1995) (en banc); Todd v. Baskerville, 712 F.2d 70, 74 (4th Cir. 1983).

The Supreme Court further has identified factually frivolous complaints as ones involving "allegations that are fanciful, fantastic, and delusional. As those words suggest, a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." Denton v. Hernandez, 504 U.S. 25, 32-33 (1992) (internal citations and quotation marks omitted). In making such findings, this Court may "apply common sense." Nasim, 64 F.3d at 954.

Alternatively, a plaintiff "fails to state a claim upon which relief may be granted," 28 U.S.C. § 1915A(b)(1), when the complaint does not "contain sufficient *factual matter*, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (emphasis added) (internal citations omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly, 550 U.S. at 557). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals

-3-

of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.[2]

The final ground for dismissal under 28 U.S.C. § 1915A(b)(2) generally applies to situations in which doctrines established by the United States Constitution or at common law immunize governments and/or government personnel from liability for monetary damages. See, e.g., Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984) (discussing sovereign immunity of states and state officials under Eleventh Amendment); Pierson v. Ray, 386 U.S. 547 (1967) (describing interrelationship between 42 U.S.C. § 1983 and common-law immunity doctrines, such as judicial, legislative, and prosecutorial immunity); cf. Allen v. Burke, 690 F.2d 376, 379 (4th Cir. 1982) (noting that, even where "damages are theoretically available under [certain] statutes . . ., in some cases, immunity doctrines and special defenses, available only to public officials, preclude or severely limit the damage remedy").

---

[2]Although the Supreme Court has reiterated that "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying Twombly standard in dismissing pro se complaint); accord Atherton v. District of Columbia Off. of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting Erickson, 551 U.S. at 94, and Iqbal, 556 U.S. at 697, respectively)).

Alleged Facts

According to the Amended Complaint, at 11:00 a.m. on October 20, 2021, Plaintiff was "practicing [his] Muslim faith" in the I-Dorm dayroom at Sanford Correctional Center, where he was then housed. (Docket Entry 8 at 10.) It states without elaboration or examples that such "practice is common in the I-Dorm day room, and [Plaintiff] had previously practiced [his] faith there without comment, as had other inmates." (Id.) However, on this date, Defendant Sgt. Watson ordered Plaintiff to remove all of his religious materials from the table where he was praying and studying and stated that if he did not, Defendant Watson would put them in a garbage bag. (Id.) Plaintiff complied. (Id.) However, the Amended Complaint states that Caucasian inmates practicing Christianity are allowed to come to the I-Dorm dayroom on Sundays to conduct Sunday school classes even though they are not assigned to that dormitory. (Id.) Based on that, Plaintiff believed that Defendant Watson stopped his religious practice based on his Muslim faith and African-American race in violation of his right to equal protection under the Fifth and Fourteenth Amendments of the United States Constitution. (Id.)

Plaintiff allegedly responded to Defendant Watson's actions by writing to Defendant Warden M. Shelton on November 7 and 14, 2021, stating that Defendant Watson had violated his constitutional rights. (Id.) Three days after the second letter, on November 17, 2021, Defendant Shelton allegedly directed an officer to drive to Plaintiff's work release site, remove him, return him to Sanford Correctional, and have him pack his belongings for a

transfer to Richmond Correctional Institution[3] in Hoffman, North Carolina, which did not have a work release program. (Id.) Plaintiff believes that transfer was coordinated between Defendant Shelton and Defendant Warden Brayboy, the warden at Richmond Correctional, to punish him and prevent him from participating in work release in retaliation for complaining about Defendant Watson's alleged violation of his rights. (Id. at 11.)

This led Plaintiff to file an administrative prison grievance alleging a "violation of [his] First Amendment religious right." (Id. at 15.) Defendant Nakisha N. Parrish allegedly denied the grievance, stating that Defendant Shelton did not allow any faith to use the day room to display their religious faith and that Plaintiff was transferred "'in order to not undermine the facility authority.'" (Id. at 11.) The Amended Complaint states that this was not correct, that Defendant Parrish was not impartial in deciding the grievance, and that she denied it in an attempt to shield Defendants Watson, Shelton, and Brayboy from liability for violating Plaintiff's rights and to prevent redress for those violations. (Id.) Plaintiff appealed the denial, which led to a further denial by Defendant Ramon R. Gutierrez that stated that Plaintiff's transfer was part of a transfer request from another facility and that Plaintiff met all criteria for a transfer. (Id.) Plaintiff disagreed with this conclusion and the Amended Complaint accuses Defendant Gutierrez of a lack of impartiality and also attempting to shield other Defendants from liability for their violations of Plaintiff's rights. (Id. at 12.) Plaintiff

---

[3] The Amended Complaint refers to this facility at separate times as both Morrison Correction and Richmond Correctional. The Court will refer to the prison as Richmond Correctional Institution which, according to the website of the North Carolina Department of Adult Corrections, is the current name of the facility.

subsequently filed a final appeal which resulted in a denial by Defendant Kimberly D. Grande stating that the record did not reveal any violation of prison policies or misconduct by staff. (Id.) Plaintiff again views this as an attempt to somehow shield the other Defendants and prevent him from receiving a remedy for the prior violations and a return to work release. (Id.)

Thereafter, in March of 2022, Plaintiff transferred to Wilkes Correctional Center, which did have a work release program, but Defendant Warden Prince denied Plaintiff's entry into that program due to the fact that he was not enrolled in a Mutual Agreement Parole Program (MAPP). (Id. at 13.) The Amended Complaint alleges that this had not been an issue at Sanford Correctional even though the two prisons operate under the same rules and concludes that this was a further act of retaliation against Plaintiff. (Id.) On November 4, 2022, Plaintiff again transferred prisons, this time to Roanoke River Correctional. (Id.) There, Defendant Warden Hardy allegedly denied his participation in a work release program based on a claimed need for a psychological evaluation. (Id.) The Amended Complaint alleges that Plaintiff did have an evaluation as part of his admission process for entry into the MAPP, which had begun prior to his transfer from Sanford Correctional. (Id.) The Amended Complaint does not indicate that Plaintiff ever completed this process. The Amended Complaint claims that the denial of work release by Defendant Hardy is another instance of retaliation. (Id.)

Analysis

Before addressing the Amended Complaint, the Court first notes that the Complaint names several Defendants, J Silver-Jones, Matthew Cole Wood, Ms. White, C. Gast, Officer Johnson, and Case Manager Lee, not named or mentioned in the Amended Complaint. The Complaint itself contained no meaningful allegations against these Defendants. In fact, it does not appear to mention them in the sections setting out factual allegations other than to state that Defendant Lee can confirm certain facts related to Plaintiff's transfer from Sanford Correctional. (Docket Entry 1 at 9.) Being a possible witness does not somehow violate Plaintiff's rights. Therefore, neither the Complaint nor Amended Complaint states any claim for relief against this set of Defendants and they should be dismissed from the case.

Turning now to issues with the Amended Complaint, exhaustion is required before Plaintiff may bring this action. See 42 U.S.C. § 1997e; Porter v. Nussle, 534 U.S. 516 (2002); Booth v. Churner, 532 U.S. 731 (2001). Although Plaintiff can bring both exhausted and unexhausted claims, "no unexhausted claim may be considered." Jones v. Bock, 549 U.S. 199, 220 (2007). Here, the failure to exhaust most of Plaintiff's claims is clear from the face of the Complaint, which would allow for dismissal of those claims even though exhaustion is an affirmative defense rather than a pleading requirement. See Custis v. Davis, 851 F.3d 358, 361-62 (4th Cir. 2017); Anderson v. XYZ Correctional Health Servs., 407 F.3d 674, 681-82 (4th Cir. 2005).

Plaintiff's original Complaint alleged that Plaintiff filed a grievance at Richmond Correctional alleging "a violation of Plaintiff[']s First Amendment Right" and that Defendant

Shelton transferred him as punishment and/or because of his religion. (Docket Entry 1 at 19.) As noted above, the Amended Complaint reports the same grievance but only lists the alleged First Amendment violation, not a retaliatory transfer, as the subject matter of the grievance. However, the response to the grievance by Defendant Parrish that Plaintiff's transfer was to keep him from undermining facility authority indicates that the question of the transfer was likely part of the grievance. Therefore, reading the pleadings in the light most favorable to Plaintiff, they allege that he filed a single grievance claiming religious discrimination and a retaliatory transfer to Richmond Correctional. However, given the timing and nature of that grievance, it necessarily could not have covered any of the claims Plaintiff raises concerning the handling of his grievance, the subsequent transfers to Wilkes Correctional and Roanoke River Correctional, or denials of work release at those facilities. The Amended Complaint mentions a response by Defendant Hardy to a "grievance of her denial" of his request for work release. (Docket Entry 2 at 13.) However, it is clear that this refers only to a challenge to the work release denial. It does not refer to an administrative grievance exhausted through the three-step process such as was detailed in relation to Plaintiff's Richmond Correctional grievance which alleged that she violated Plaintiff's rights by joining in an alleged conspiracy with the other wardens to retaliate against Plaintiff. For this reason, only Plaintiff's claims that Defendants Watson and Shelton discriminated against him based on his religion and that Defendants Shelton and Brayboy arranged his transfer in retaliation for his complaints about the discrimination are arguably exhausted and may be considered. Plaintiff's other claims should be dismissed.

Before moving on to address Plaintiff's exhausted claims, the Court also notes that even if the unexhausted claims were exhausted, those claims are not viable. The claims against Defendants Parrish, Gutierrez, and Grande are based on their denials of Plaintiff's grievance. As the Court informed Plaintiff previously, there is no substantive due process right to a prison grievance procedure. <u>Grieveson v. Anderson</u>, 538 F.3d 763, 772 n.3 (7th Cir. 2008) (no substantive right to a grievance procedure); <u>Adams v. Rice</u>, 40 F.3d 72, 75 (4th Cir. 1994) (no right to any grievance procedure or to access any procedure voluntarily created by the State). Plaintiff is also not entitled to a grievance procedure or to any particular outcome when using that procedure. Plaintiff attempts to state claims against these Defendants by alleging that they were part of some larger conspiracy to retaliate against him for the events at Sanford Correctional, cover up the actions of Defendants Watson, Shelton, and Brayboy, or prevent him from seeking redress for the violations of his rights. The claims of retaliation are entirely conclusory as Plaintiff bases them on nothing more than these Defendants' denials of his grievance and the fact that Plaintiff disagrees with their reasoning. This is the essence of "an unadorned, the-defendant-unlawfully-harmed-me accusation" which is not sufficient to state any claim for relief. Plaintiff's contentions that their denials were intended to cover up the actions of other Defendants or prevent him from seeking relief are nonsensical as the alleged actions could accomplish neither of those goals. Plaintiff was able to exhaust his grievance addressing the original incident at Sanford Correctional and bring the current suit. Denying his grievance did not and could not prevent this. Similarly, Plaintiff makes conclusory claims that Defendants Prince and Hardy denied him work release

as part of the same far reaching conspiracy against him. He again supports this with no facts indicating retaliation, only that they reached decisions with which he disagrees or that other persons might have made different decisions at other prisons in the past. This is not sufficient to state claims upon which relief may be granted against these Defendants. Similarly, the denial of work release alone does not state a claim under § 1983 because there is generally no federal constitutional right to work release or any prison job. O'Bar v. Pinion, 953 F.2d 74, 85 (4th Cir. 1991) (no constitutional right to work release in North Carolina and removal from it, placement in administrative housing, and reclassification did not violate a prisoner's rights). Plaintiff's claims against Defendants Parrish, Gutierrez, Grande, Prince, and Hardy should also be dismissed for this failing to state any claim upon which relief may be granted.

The remaining claims in the case are that Defendants Watson and Shelton discriminated against Plaintiff in the basis of his religion and race by not allowing him to practice his religion in the dormitory day room on October 20, 2021, and that Defendants Shelton and Brayboy arranged to transfer him to Richmond Correctional and away from his work release assignment in retaliation after he complained about the alleged discrimination. The gravamen of Plaintiff's religious discrimination claim is that Watson and Shelton treated him, as a African-American inmate practicing the Muslim faith, differently from Caucasian prisoners who practice Christianity. Such a allegation, if supported, would state a claim under the Equal Protection Clause of the Fifth and Fourteenth Amendments of the United States Constitution. "'To succeed on [such a] claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the

-11-

Case 1:23-cv-00138-WO-LPA   Document 10   Filed 07/03/23   Page 11 of 15

unequal treatment was the result of intentional or purposeful discrimination.'" Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Plaintiff's filings do not sufficiently allege that he was treated differently from any similarly situated person. Defendant Watson, while allegedly enforcing Defendant Shelton's policy, ordered Plaintiff to remove his religious items from a table in the day room on a single occasion on an apparently random day. The Amended Complaint alleges generally that "Caucasian inmates practicing Christianity in the I-Dorm day room had never been ordered to stop their worship, much less threatened with disposal of their articles of worship." (Docket Entry 2 at 10.) The original Complaint makes similar allegations. However, the Amended Complaint goes on to explain that the Caucasian Christian inmates are allowed to use the day room to hold Sunday school classes at three or four tables every week. (Id.) The Original Complaint adds an allegation that they are allowed to store materials on a shelf in the day room, apparently while they were not holding class. (Docket Entry 1 at 22.) Plaintiff was not similarly situated to the inmates described. He sought to engage in an unplanned, unorganized, self-observance in the day room. The Caucasian Christian inmates he points to as being similarly situated were instead conducting organized weekly group meetings on a set day. Plaintiff's pleadings make no allegation that he was conducting such meetings or that he sought permission to do so and was denied. Therefore, he is not similarly situated to the Christian inmates described and his filings do not state a claim for a violation of his equal protection rights.

Plaintiff's final surviving claim is that Defendants Shelton and Brayboy transferred him away from Sanford Correctional as retaliation after he complained about Defendant

-12-

Watson's actions. Sufficiently "detailed factual allegations" of retaliation can constitute a claim under § 1983, see Booker v. South Carolina Dept. of Corr., 855 F.3d 533, 545 (4th Cir. 2017), although a "bare and conclusory assertion of retaliation" does not, see Mills v. Maryland, Civil Action No. DKC-17-2305, 2018 WL 4538584, at *10 (D. Md. Sept. 21, 2018). As to Defendant Shelton, the Amended Complaint does state a viable claim for relief. Plaintiff allegedly complained to Defendant Shelton about Defendant Watson's actions on November 7 and 14, 2021 and was transferred only three days later. More importantly, one response to Plaintiff's grievance reflects that Plaintiff had no issues for two years at Sanford Correctional, while another then states that he was transferred in order to "not undermine the facility authority." (Docket Entry 1 at 26.) This is sufficient to support a possible retaliation claim at this time and that claim should proceed. However, the Court also notes that the grievance response discussing undermining institutional authority further states that Plaintiff was attempting to "erect a 'shrine' in the dayroom" even though religious faiths are not allowed to use the day room "as a means to display their religious faith." (Id.) This is a fact not alleged in Plaintiff's pleadings. However, Plaintiff should be aware that if it proves to be true that he was attempting to erect an unauthorized shrine in a day room in violation of institutional policy and that this was the reason for his transfer, this will likely prove fatal to his claim of retaliation. The Court also notes that the Amended Complaint names Plaintiff Shelton in both her individual and official capacities. The individual capacity claim may proceed. However, Defendant Shelton is a state official which means that the official capacity claim against her is also a suit against the State. Kentucky v. Graham, 473 U.S.

-13-

159, 166 (1985) (holding that official capacity claims against state officials are suits against the State).  Neither the State nor its agencies are "persons" subject to suit for damages under § 1983.  Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989).  The Amended Complaint does seek injunctive relief in the form of Plaintiff's reinstatement to work release, but Plaintiff is no longer housed in Defendant Shelton's prison or within her control.  Therefore, the request for injunctive relief cannot apply to her and the official capacity claim as to Defendant Shelton should be dismissed with only the individual capacity retaliation claim proceeding.

The Amended Complaint also alleges that Defendant Brayboy participated in Defendant Shelton's alleged retaliation by agreeing to his transfer to Richmond Correctional.  Although it may be true that Defendant Brayboy agreed to accept Plaintiff as part of the transfer, the Amended Complaint does not allege facts demonstrating that Defendant Brayboy knew of any retaliatory reasons for the transfer and agreed to help with the retaliation.  Prisoner transfers occur constantly for many reasons and the pleadings contain no allegations that Defendant Brayboy accepted Plaintiff while knowing of any potentially improper reason for the transfer.  The Amended Complaint is too conclusory to state any claim for relief and Defendant Brayboy should be dismissed from this action.

IT IS THEREFORE ORDERED that the Clerk shall prepare and file a request for a waiver of service for Defendant Shelton and proceed under the process for service set out in Standing Order 19 of this Court.

IT IS RECOMMENDED that Plaintiff's individual capacity retaliation against Defendant Shelton be allowed to proceed but that all other claims be dismissed *sua sponte* pursuant to 28 U.S.C. § 1915A for being frivolous or malicious or for failing to state a claim upon which relief may be granted or seeking monetary relief against a defendant who is immune from such relief.

This, the 3rd day of July, 2023.

                                          /s/ L. Patrick Auld
                                             **L. Patrick Auld**
                                    **United States Magistrate Judge**