IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| LEROY RICHARDSON-BEY,<br><br>Plaintiff,<br><br>v.<br><br>WARDEN M. SHELTON,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 1:23-cv-138 |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

On August 31, 2026, this case was called for trial. The action was tried by this court without a jury. Evidence was presented and the trial was completed on September 3, 2026. The matter was taken under advisement by this court. For the reasons set forth herein, this court finds in favor of Defendant and the case will be dismissed.

## I. Procedural History

Plaintiff filed a pro se complaint under 42 U.S.C. § 1983. Because Plaintiff is a prisoner seeking redress from a governmental entity or its officers, the Magistrate Judge screened the complaint under 28 U.S.C. § 1915A and recommended that all but one claim be dismissed. (Doc. 10.) No objections were filed, and this court adopted the Recommendation. (Doc. 14.) One claim now remains: that Plaintiff Richardson-Bey was retaliated against by Defendant Shelton for complaining about

the decision to remove his belongings from a table in the day room. The claim proceeds against Defendant Shelton in her individual capacity. (Doc. 10 at 15.)

This court has jurisdiction over Plaintiff's claim pursuant to 28 U.S.C. §1331 because Plaintiff's sole remaining claim arises under 42 U.S.C. § 1983.

Following the denial of summary judgment, the matter was calendared for trial. (Docs. 42, 48, 49.) Thereafter, the parties withdrew their demands for a jury trial by stipulation and consented to this action being tried by the court without a jury. (Docs. 65, 66.) On August 31, 2026, the matter came before this court. The parties submitted a stipulated set of facts and stipulated set of exhibits. Those stipulated facts and exhibits are incorporated by reference as if fully set out herein.

## II. **Findings of Fact**

"In an action tried on the facts without a jury . . . the court must find the facts specially and state its conclusions of law separately. The findings and conclusions . . . may appear in an opinion or a memorandum of decision filed by the court." Fed. R. Civ. P. 52(a)(1). Although separate, to the extent any findings of fact constitute conclusions of law, or vice-versa, they shall be regarded as such. See, e.g., Utzinger v. United States, 432 F.2d 485, 489 (6th Cir. 1970) (noting that "labels

applied [to findings of fact and conclusions of law] are not controlling").

Sitting as the finder of fact, this court may also "disregard testimony of any witness when satisfied that the witness is not telling the truth, or the testimony is inherently improbable due to inaccuracy, uncertainty, interest, or bias." Taylor v. Republic Servs., Inc., 968 F. Supp. 2d 768, 775 (E.D. Va. 2013) (citing Penn-Texas Corp. v. Morse, 242 F.2d 243, 247 (7th Cir. 1957)); see also Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co., 56 F.3d 556, 567 (4th Cir. 1995).

This court has considered all of the testimony and evidence in the case including both direct evidence and circumstantial evidence. The court, in finding facts, may infer from one established fact the existence or non-existence of some other fact based on reason, experience, and common sense. Inferences can be drawn only from facts in evidence and may not be based on mere speculation, guess, or conjecture as to what might have happened. The law makes no distinction between the weight to be given to either direct or circumstantial evidence.

Applying these standards, this court finds the following facts:

1. Plaintiff Leroy Richardson-Bey called Defendant Melanie Shelton as a witness. Now retired, Defendant Shelton served as Warden of Sanford Correctional at all times relevant to the

complaint. After observing the witness and hearing her testimony, this court finds her testimony credible and adopts it. Defendant Shelton attempted to testify clearly, answered questions directly, demonstrated candor, and showed no signs of conduct inconsistent with her apparent truthfulness.

Plaintiff challenged Defendant Shelton's credibility on two main grounds, and the court has considered both in evaluating her testimony. First, interrogatory responses served in October 2024 stated only that Defendant Shelton did not recall the specific details regarding plaintiff's transfer. Defendant Shelton testified at trial in more detail. This court does not find this to be a meaningful inconsistency. Those interrogatory responses were given in 2024. Defendant Shelton explained that she did not recall the events until she prepared for trial a few weeks before it began, when she reviewed the OPUS records and other documents.[1] This court finds that the pre-trial review

[1] Plaintiff objected to portions of Defendant Shelton's testimony because it had not been disclosed during discovery. This court found, and still finds, that the testimony is not unfairly surprising and the non-disclosure is harmless. While the responses to the filed grievance vary, Defendant Shelton's specific testimony is for the most part consistent with the disclosures in the documents and defendants' own testimony. See e.g., Wilkins v. Montgomery, 751 F.3d 214, 222 (4th Cir. 2014) (explaining the relevant factors). For example, Plaintiff admits the tables were for the benefit of all inmates; Plaintiff also admits he complained to other inmates. However, the court does not countenance the failure of defense counsel to supplement responses.

refreshed her recollection. Second, Plaintiff argues that Defendant Shelton's explanation for the transfer shifted at trial. This court disagrees. The OPUS entry made on the day of the transfer states that Plaintiff was transferred "in order not to undermine facility authority." (Pl's. Ex. 37.) Defendant Shelton's trial testimony explains that entry; it does not depart from it. Plaintiff did not identify testimony by Defendant Shelton that is shown to be inaccurate.

2. Plaintiff also called Shameka Adams as a witness. In November 2021, at all relevant times for this case, Ms. Adams was the Correctional Program Supervisor at Richmond Correctional ("Richmond"). She coordinated the prisoner swap of Plaintiff for a Richmond inmate on November 16, 2021. Her testimony is largely undisputed, and this court finds it credible. Thus, this court adopts her testimony in its entirety. Two facts in her testimony are especially significant. First, she indicated, and the emails confirm, that Sanford's Program Director, Jennifer Jones, had first tried to place Plaintiff at Hyde Correctional ("Hyde"), which had work release. (Pl. Ex. 36.) This is some evidence that the transfer was not designed to take work release away from Plaintiff Richardson-Bey by Defendant Shelton or Ms. Jones.

Second, after reviewing the transfer comments in the OPUS system (Pl's. Ex. 37), Ms. Adams testified that Plaintiff was transferred because he was upset that Defendant Shelton didn't

allow him to erect a shrine in the day room. Her reading of the OPUS entry is not binding on the court, but it is consistent with the entry itself and with Defendant Shelton's testimony.

3. Plaintiff testified at trial. This court largely rejects Plaintiff's testimony as unreliable. The court gives Plaintiff's testimony no weight on any matter that is not corroborated by other sufficiently reliable evidence.

This court finds Plaintiff has been impeached on cross-examination and this court finds he testified falsely as to a material fact: the reason his application for the Mutual Agreement Parole Program ("MAPP") was denied. The delay in his MAPP placement is part of the damages Plaintiff attributes to Defendant Shelton. On direct examination, Plaintiff testified that his November 17, 2021, transfer from Sanford to Richmond "derailed" his MAPP agreement. On cross-examination, Plaintiff Richardson-Bey added that his MAPP application was "already in play in 2020."

Yet on cross-examination, Defendant presented Plaintiff a copy of a May 2022 letter from the Parole Commission. Plaintiff admitted that he had received and read the letter. The letter gives two reasons for the denial: Plaintiff's release at that time would unduly depreciate the seriousness of his crime or promote disrespect for the law, and there is a substantial risk that he would engage in further criminal conduct. Neither reason

has anything to do with work release or with the transfer from Sanford. Asked where the letter attributed the denial to his transfer, Plaintiff answered, "in my heart." Plaintiff knew that the MAPP denial had nothing to do with the transfer, yet he testified otherwise. From Plaintiff's demeanor while testifying and the facts, the court finds that Plaintiff knew this testimony was false. The court understands his answer "in my heart" as an acknowledgement of that fact. Plaintiff's false testimony about the MAPP denial impeaches his testimony generally and reflects his bias against Defendant Shelton. This court rejects his testimony unless reliable evidence corroborates it.

Relatedly, Plaintiff's testimony about the day room table is also inconsistent. His November 7, 2021, letter, which he claims he sent to Defendant Shelton, stated the chairs and tables were open to everyone. Plaintiff affirmed at trial that this statement was true. Yet Plaintiff also testified that, under an informal practice among the inmates, he held a right to one of the day room tables, and that no one could use the designated table without Plaintiffs permission while his items were on it. When asked whether excluding others was "the whole point of leaving" his items there, he answered, "Sure." A table in this common area cannot be both open to everyone and controlled by Plaintiff.

This court finds Plaintiff's testimony untrustworthy and unreliable. It is rejected in all instances unless reliable evidence corroborates it.

4. Plaintiff, Mr. Richardson-Bey, is an inmate in the custody of the North Carolina Department of Adult Corrections. He was housed at Sanford Correctional Center ("Sanford"), a minimum custody facility, from November 27, 2018, until November 17, 2021. Defendant, Ms. Shelton, was Warden of Sanford at all times relevant here. Plaintiff had no disciplinary infractions while at Sanford.

5. Plaintiff is a Moorish American Muslim and practices his faith. There is no dispute as to Plaintiff's sincere beliefs.

6. Plaintiff was on work release while at Sanford and worked regularly, earning a significant income.

7. Plaintiff was housed in I-dorm at Sanford. I-dorm houses about 60-70 inmates. Within I-dorm is a day room (i.e., common area) with approximately four tables and chairs. The day room tables are not assigned and are available for use by all inmates.[2] This court rejects Plaintiff's testimony that at least one Christian group uses a specific table and kept that table

[2] This court rejects Plaintiff's testimony that a seating arrangement was established by inmates and followed by all inmates within I-dorm. Even if such an arrangement existed among the inmates, the facility did not authorize it and such an arrangement is inconsistent with Plaintiff's statement that these tables are for the use of all inmates.

for extended periods of time by leaving Christian materials on the table.

8. When worshipping, Plaintiff kept religious books, a prayer rug, and other religiously significant articles out on the table. Plaintiff, like other inmates, had a locker for his personal belongings, and personal property was to be stored there. No faith group was permitted to keep a display in a day room. Faith-based services were to be conducted at regimented times per correctional facility policy.

9. On October 30, 2021, Plaintiff left his religious items on a day room table while he went to the chow hall, which is in a separate building about a three-minute walk away. Whether or not Plaintiff used the materials and table to conduct his prayers, this court finds that Plaintiff left his religious articles unattended on a table in the day room for an extended period of time while Plaintiff was not present.

10. This court finds that both Sgt. Watson and Defendant Shelton referred to Plaintiff's religious materials as a shrine and directed that those materials be removed from the table. While Plaintiff appeared to challenge this reference, the semantic argument is immaterial. When the court asked Plaintiff what he would call it, he testified, "I would classify it as a shrine, yes, sir." At least one definition of "shrine" is "a small area or structure arranged for private devotion" Shrine,

Merriam-Webster's Collegiate Dictionary 1244(3rd ed. 1988) The court finds the description accurate.

11. Sgt. Watson, an officer on duty, told Plaintiff to remove the items before Plaintiff went to chow. Plaintiff did not do so. Sgt. Watson then found Plaintiff in the chow hall and again told him to remove them. Plaintiff’s failure to follow the first directive could have been charged as a disciplinary infraction for disobeying a direct order. Had Plaintiff not removed the items after being told to, they would have been treated as contraband. No infraction was issued.

12. Neither Defendant Shelton nor Sgt. Watson told Plaintiff that he could not pray, meditate, study the Koran, or otherwise practice his religion in the day room. Plaintiff conceded as much. The only restriction placed on him was that he could not continuously keep his items on the table unattended.

13. After the October 30 incident, Plaintiff told other inmates that the Warden had discriminated against him on the basis of his race and religion. This court rejects Plaintiff’s testimony that he only answered other inmates’ questions and did not seek anyone out. That testimony is not corroborated, and this court does not credit it. No evidence shows that Plaintiff asked or encouraged any other inmate to file a grievance or to use any other channel for raising complaints. Plaintiff did not testify that he did so, and Defendant Shelton was not told that

he did. Instead, this court finds Plaintiff disparaged Defendant Shelton to other inmates an effort to undermine her authority.

14. Sgt. Watson reported to Defendant Shelton, on multiple occasions, that Plaintiff was expressing his discontent to other inmates about the removal of his items and this discontent was fomenting hostility. Defendant Shelton regarded Sgt. Watson as an experienced sergeant and she credited his reports. This court finds that Defendant Shelton believed in good faith that Plaintiff's statements to other inmates were stirring hostility in I-dorm.

15. Plaintiff contends that he wrote to Defendant Shelton on November 7 and November 14, 2021, complaining that Sergeant Watson's actions violated his First Amendment rights. This court finds that Defendant Shelton did not receive either letter, and did not know of either one, before Plaintiff's transfer. Plaintiff's testimony is unreliable for the reasons stated above, and no reliable evidence corroborates it. In fact, the evidence is to the contrary. Plaintiff testified that he made a copy of the November 7 letter with carbon paper. No carbon copy or original was produced, only a machine copy. No copy or original of a November 14 letter was produced at all. Sanford's Correspondence Tracking System does not show receipt of a letter from Plaintiff on or around November 7 or November 14, 2021. (Pl.'s Ex. 32.) Defendant Shelton does not remember receiving

either letter. Plaintiff received no response to either letter. This court finds Plaintiffs testimony unreliable and concludes Plaintiff did not write or send either letter on November 7 or November 14.

16. This court finds that Defendant Shelton had no notice or knowledge, of any type, that Plaintiff filed, or intended to file, a grievance because of the order to remove his religious materials from the table in the day room on October 30, 2021. Instead, 16 days passed after the October 30 incident without a grievance filed by Plaintiff, and this court finds it reasonable to infer that Plaintiff did not intend to file a grievance. This inference is based not only on the passage of time, but also because Plaintiff was fully aware that the tables in the day room were open for the use of everyone and his actions precluded the use of that table by others without his permission. Relatedly, this court finds it more likely than not that Plaintiff was aware that when he failed to remove the items as ordered by Sgt. Watson, he committed a disciplinary infraction.

17. Plaintiff introduced an email from Jennifer Jones to Shameeka Adams in which Ms. Jones states that Plaintiff "claims to be of the Islamic faith and he claims Defendant Shelton is discriminating against him because she made him take his display down. She won't allow any faith to put up a shrine or display." (Pl.'s Ex. 36.) Plaintiff contends this is evidence that

Defendant Shelton was aware of Plaintiff's grievance and is sufficient to support the finding that Defendant Shelton was on notice of the grievance. The email makes no mention of a grievance, a letter, or any complaint made through an official channel. Contrary to Plaintiff's argument, this court finds that the comments in the email, which were acknowledged by Defendant Shelton during her testimony as accurate, are a reflection of the comments Plaintiff was making to other inmates in an effort to undermine Defendant Shelton's authority.

18. Defendant Shelton told Ms. Jones that Plaintiff needed to be swapped to another facility. She did so because of Plaintiff's interactions with other inmates that left the Defendant concerned about a hostile environment. This court finds that this was the sole reason for Defendant Shelton's decision and contrary to Plaintiff's allegations, Defendant Shelton did not retaliate against Plaintiff.[3]

19. Although Defendant Shelton initiated the transfer request, she did not designate the receiving facility, did not tell Ms. Jones what to write, and had no control over whether Plaintiff would receive work-release elsewhere. While Ms. Jones

[3] Defendant Shelton was asked about the regulations relating to the grievance process and acknowledged her duty not to interfere with the grievance process. The testimony was compelling and constitutes another reason the court finds Defendant did not act in a retaliatory manner.

attempted to transfer Plaintiff to Hyde Correctional, a facility with work-release, Plaintiff Richardson-Bey was transferred to Richmond Correctional, which did not have work-release.

20. Plaintiff was transferred to Wilkes Correctional in March 2022, a facility with work-release. (Pl's Ex. 34.) Plaintiff later obtained a MAPP agreement and resumed work-release in June 2025. This court finds Defendant Shelton did not remove her recommendation for MAPP at any point and had no influence on the work release decision in June 2025.

## III. Conclusions of Law

"To state a colorable First Amendment retaliation claim, a plaintiff must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." Martin v. Duffy, 977 F.3d 294, 299 (4th Cir. 2020) (cleaned up). Plaintiff contends that Defendant Shelton violated his First Amendment right to file a grievance by transferring him to a facility without work release.

### A. Protected Activity

Filing a prison grievance is protected First Amendment activity. Jones v. Solomon, 90 F.4th 198, 213 (4th Cir. 2024); Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017) ("Martin I"); Booker v. S.C. Dep't of Corr., 855 F.3d 533, 544–45 (4th Cir.

2017). That protection extends to the informal steps of a prison grievance process, not only to formal written grievances. Gowen, 130 F.4th at 174.

To the extent Plaintiff's protected activity is the act of writing letters or filing the grievance, the first element is not met prior to the transfer decision. At trial, however, Plaintiff argued that his protected activity under element one also included his religious practice at the day room table and his statements to other inmates. Neither theory succeeds.

Plaintiff's free exercise claim was dismissed at screening and is not before the court. (Doc. 10.) In any event, that claim would be governed by a different framework: a prison restriction that burdens an inmate's religious exercise is valid if it is reasonably related to legitimate penological interests. Turner v. Safley, 482 U.S. 78, 89 (1987). See also Roberts v. Engelke, 180 F.4th 634, 646 (4th Cir. 2026). Plaintiff cannot resuscitate that claim by turning it into a retaliation claim. And the premise of the argument fails on the facts. Prayer is, of course, protected. See Sause v. Bauer, 585 U.S. 957, 959 (2018) (per curiam). But no one restricted Plaintiff's prayer. What was restricted was Plaintiff's conduct of leaving property unattended on a common table so that others could not use the table. (Findings ¶¶ 8–12.) Plaintiff had no First Amendment right to reserve a common table in a shared day room for his own

use. To the extent the day room is used for prayer and worship on prescribed days, (Pl's. Ex. 2), Plaintiff does not allege that anyone interfered with his Islamic services. The Free Exercise Clause protects Plaintiff's prayer and free exercise; it does not protect any alleged authority by Plaintiff to reserve or control common area property to the exclusion of inmates.

Turning next to Plaintiff Richardson-Bey's statements to other inmates, Plaintiff first raised this theory at trial in response to Defendant Shelton's testimony. It is not the claim that survived screening and this court declines to expand the claim at this stage.

Even if the theory were properly before the court, Plaintiff has not shown his statements to other inmates were protected activity. The Fourth Circuit recognizes a right to be free from retaliation for "peaceably encouraging other incarcerated people to submit grievances about the conditions of confinement." Gowen, 130 F.4th at 173 (citing Lamar v. Payne, 111 F.4th 902, 908 (8th Cir. 2024). That is not what happened here. Plaintiff did not encourage anyone to file a grievance or to use any other channel for raising complaints. (Finding ¶ 13.) Instead, he told other inmates that the Warden had discriminated against *him* because of *his* race and religion – his own complaint, aired to listeners who have not been shown to have a

grievance of their own. No one else used the table. As reported to Defendant Shelton, those statements were generating discontent; (Findings ¶¶ 13-14), Plaintiff has presented no credible evidence of a constitutionally protected purpose for his complaints to other inmates.

Gowen protects speech that directs other inmates to the grievance process. Plaintiff's speech directed his own dispute at an audience. Restrictions on communication among inmates are judged by the same reasonableness standard as other prison regulations. See Shaw v. Murphy, 532 U.S. 223, 229–30 (2001). Prison officials need not wait for a disturbance before acting: they "must be permitted to take reasonable steps to forestall such a threat." Jones v. N.C. Prisoners' Labor Union, Inc., 433 U.S. 119, 132–33 (1977).

**B. Adverse Action**

An action is adverse if it "would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Martin I, 858 F.3d at 249 (cleaned up) (quoting Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005)). Plaintiff has established the second element to the extent he was initially transferred to a facility without work-release. Richmond had no work release program, so the transfer ended his work release and the wages it paid. (Finding ¶ 20.) Losing that income, and the dignity of earning it, would likely

deter a person of ordinary firmness from exercising First Amendment rights. Defendants concede that the transfer to Richmond constitutes an adverse action. (Doc. 85 at 4.)

That Ms. Jones initially sought a placement at Hyde, and that Plaintiff was later housed at Wilkes – both facilities with work release – bear on causation, motive, and damages if applicable. (Findings ¶¶ 19-20). Neither alters the cost of a transfer on the Plaintiff.

Plaintiff's inability to participate in MAPP has no connection to the events at Sanford, and the court does not consider it further.

**C. Causation**

Causation requires, at a minimum, that the defendant was aware of the protected activity. Gowen 130 F.4th at 173(causation requires that "the defendants were aware of [the plaintiff's] engaging in a protected activity" (quoting Shaw v. Foreman, 59 F.4th 121, 130–31 (4th Cir. 2023))); Constantine, 411 F.3d at 501. If the plaintiff shows that protected activity was a substantial or motivating factor, the burden shifts to the Defendant to show it would have taken the same action regardless. Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287 (1977); Martin II, 977 F.3d at 299. In applying the causation framework, courts "afford appropriate deference and flexibility to prison officials in the evaluation

of proffered legitimate penological reasons for conduct alleged to be retaliatory." Id. at 301 (cleaned up).

Plaintiff was directed to remove his property left unattended on common table. He complained about that decision to other inmates and what reached Defendant Shelton was that the complaint was circulating among inmates and generating discontent. (Findings ¶¶ 12-19). She transferred him on that basis. Prison officials need not wait for a disturbance before addressing one. Lumumba v. Kiser, 116 F.4th 269, 282 (4th Cir. 2024). Plaintiff identifies three strands of what he contends are protected activity resulting in retaliation activity. Each fails, though not for the same reason.

Begin with the statements to other inmates. Defendant Shelton knew that Plaintiff's incendiary, untrue complaint was spreading. But as explained above, those statements were not protected activity, and awareness of unprotected speech cannot supply the causal link.

The grievance presents the opposite problem: it could not have caused the transfer because it did not yet exist. Plaintiff was transferred on November 17, 2021. He first submitted his grievance on November 25, 2021, (Pl's Ex. 4), and resubmitted it on December 2, 2021. (Pl's Ex. 4.) Defendant Shelton did not know, before she acted, that Plaintiff had filed or intended to file a grievance. (Findings ¶¶ 19-20.) What she learned was that

he was unhappy with a proper directive and was saying so to other inmates. Knowing that an inmate is voicing an objection to a decision to other inmates is not the same as knowing that he has engaged in protected activity. The transfer email shows only that Plaintiff was expressing dissatisfaction. (Findings ¶¶ 17-18.) Without knowledge of the grievance, or the intent to file a grievance, there is no causal connection between the grievance and the transfer. Gowen, 130 F.4th at 173; Constantine, 411 F.3d at 501.

The letters fail for the same reason. This court has found that Defendant Shelton neither received nor learned of the November 7 and November 14 letters before the transfer. (Findings ¶¶ 17-18.) A letter the decisionmaker never received did not motivate the decision.

Since no protected activity was a motivating factor in the transfer, the burden does not shift to Defendant under Mt. Healthy, and the claim fails at the third element. The report to Shelton described unrest, not protected activity. She responded to the unrest.

## IV. Conclusion

Plaintiff has failed to prove that his protected activity was a substantial or motivating factor in his transfer. For the reasons set forth herein, this court finds in favor of Defendant on Plaintiff's First Amendment retaliation claim.

**IT IS THEREFORE ORDERED** that Judgment be entered in favor of Defendant and Plaintiff shall have and recover nothing.

**IT IS FURTHER ORDERED** that Defendant's motion for judgment on partial findings under Rule 52(c) is **DENIED** as **MOOT**, and that Plaintiff's motion under Rules 26(e) and 37(c)(1) to exclude testimony is **DENIED.**

A judgment consistent with this decision will be filed entered contemporaneously herewith.

This the 22nd day of September, 2026.

William L. Osteen, Jr.
United States District Judge